The contestants being now entitled under the terms of the will to all of the one-ninth share, except such portion as has been conveyed or assigned by them, they may make any arrangement or agreement with the trustees that they see fit as to their share. If they desire to force or compel a sale of all the real property, they may do so; or if they desire by agreement to allow the trustees to manage and control the same, they may do that. As to the remaining trusts, there is no occasion that I can see for leaving the property "en block," and a division of the same should be made forthwith agreeably to the provisions of the will. If the trustees will consider the property in their possession as capable of subdivision the same as if it had been divided into nine equal trusts and will divide the principal and income accordingly, I think there will be no trouble in determining the respective amounts to which each party is entitled, as it seems to me it would be simply a matter of computation. If the parties cannot agree to the adjustment of the figures upon the basis suggested, they may each submit a statement as to what their claim is and what the figures should be and the court will adjust them.

Decreed accordingly.

---

(81 Misc. Rep. 86.)

### In re THOMPSON'S ESTATE.

#### (Surrogate's Court, Dutchess County. May, 1913.)

HUSBAND AND WIFE (§ 14*)—TAXATION (§ 864*)—TRANSFER TAX—PROPERTY SUBJECT.

Where a husband and wife conveyed realty as tenants by the entirety and in payment took a purchase money mortgage and check payable to them jointly and deposited the check in the wife's name for reinvestment in realty in the same manner as that conveyed, the surviving husband became entitled to the sole possession of one-half of the mortgage and deposit and the remaining one-half of each passed into the wife's estate and was subject to a transfer tax.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 71–86, 88, 89; Dec. Dig. § 14;* Taxation, Cent. Dig. § 1679; Dec. Dig. § 864.*]

Assessment of transfer tax on the estate of Julia de Windt Hook Thompson, deceased. Appeal from an order assessing such tax. Affirmed.

Frank Hasbrouck, of Poughkeepsie, for executors.
John J. Mylod, of Poughkeepsie, for State Comptroller.

HOPKINS, S. This is an appeal from an order assessing the transfer tax upon the estate of the above-named decedent, based upon the report of the appraiser. He reported that one-half of a bond and mortgage given by one Eugene H. Pool to Von Beverhout Thompson and Julia de Windt Thompson, his wife, upon which there was due at the date of the death, July 6, 1912, of said Julia de Windt Thompson for principal and interest, the sum of $30,383.33, was taxable, and also that one-half of a deposit of $12,889.71 in the Union Trust Company of New York, standing in the name of Julia de Windt Thompson at the time of her death, was taxable.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date. & Rep'r Indexes

The appellant claims that both of the above items should be stricken out and exempted from taxation for the reason that both amounts were the proceeds of real estate owned by Von Beverhout Thompson and his wife as tenants by the entirety, and, in case of the death of either, the survivor became the owner of the whole, and that the said mortgage and money retained the same character by agreement of the parties. Such claim is based upon the fact that certain real estate owned by them in the city of New York, as tenants by the entirety, was sold and conveyed, and a purchase-money mortgage for $30,000 taken in their joint names, and a cash payment of $12,750 of the purchase price deposited in the Union Trust Company in decedent's name, solely for the purpose of being reinvested in real estate in the same manner as they held that which they sold.

All the testimony in this matter is in the form of affidavits, filed with the appraiser, and it appears that the only testimony to support the agreement claimed to have been made between Dr. Thompson and his wife was given solely by Dr. Thompson, without corroboration, and in his own interest, and having the effect of defeating the assessment of any tax upon the property in question, and it seems to me that, although his testimony is absolutely true, it is improper and inadmissible in view of his interest in the estate and should not have been received. To accept the sole testimony of a witness directly interested in the result in proceedings of this character would absolutely nullify the transfer tax law and open the door for the prevention of the imposition of any tax in all similar cases. Such evidence would be inadmissible in any court against the estate of a deceased person, relative to any agreement, transaction, or understanding between the witness and such deceased person, affecting the disposition of the estate or the interest of the witness therein, and such rule should be applied in proceedings of this kind. The transfer tax law and the decisions thereunder are fully discussed in Matter of Durfee, 79 Misc. Rep. 655, 140 N. Y. Supp. 594, and I fully concur with the conclusions in that case, and it would be needless for me to enlarge upon the questions there determined.

When Dr. Thompson and his wife, being tenants by the entirety, conveyed the New York real estate and accepted part cash and a purchase-money mortgage for the balance, made payable to both, the tenancy by the entirety was ended, and he, as survivor, was not entitled to the whole proceeds on her death without legal evidence of agreement or gift. Matter of Baum, 121 App. Div. 496, 106 N. Y. Supp. 113; Matter of Albrecht, 136 N. Y. 91, 32 N. E. 632, 18 L. R. A. 329, 32 Am. St. Rep. 700.

As there is no evidence such as the law and established rules of practice require of either agreement or gift, it follows that, upon the death of Mrs. Thompson, Dr. Thompson, her husband, became entitled to the sole possession of one half of the mortgage above mentioned, and it appearing from the testimony of the witness Taylor that the $12,750 was money received from the sale of said real estate and was paid to Dr. Thompson and his wife by check made in their joint names, he upon her death became entitled to the possession of one-

half thereof, the remaining half of said two funds passing into the estate of said decedent as personal property, subject to taxation under the provisions of the taxable transfer act; therefore the determination of the appraiser was correct, and must be affirmed. Let an order to that effect be entered.

Order affirmed.

(81 Misc. Rep. 103.)

### In re POLCHINSKI.

(Surrogate's Court, New York County. May, 1913.)

1. WILLS (§ 733*)—CONSTRUCTION—TIME FOR PAYMENT OF LEGACY.

A legacy to the pastor of a certain church for saying masses for the souls of testatrix and her husband is payable to the pastor of the church at the time of testatrix's death.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1819–1846; Dec. Dig. § 733.*]

2. WILLS (§ 775*)—LAPSED LEGACY—RESIDUARY ESTATE.

Where both the legatee and her sole child and issue predeceased testatrix, the legacy lapsed and was distributable under the residuary clause of the will; Decedent's Estate Law (Consol. Laws 1909, c. 13) § 29, as amended by Laws 1912, c. 384, saving from extinguishment a legacy bequeathed to a descendant who shall die during testator's lifetime leaving a child who shall survive testator, not applying where both the legatee and the child predeceased testatrix without leaving issue.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1997–2000; Dec. Dig. § 775.*]

Judicial settlement of the account of Joseph Polchinski, executor of Agnes Rywolt, deceased. Decreed according to opinion.

William A. Keating, of New York City, for executor.
James F. Donnelly, of New York City, for Marian Oboroska.
Joseph P. Bourke, of New York City, special guardian.

COHALAN, S. This matter now comes before the surrogate upon an executor's accounting, in which a construction is asked of paragraphs 3 and 10 of the will of the above-named decedent.

Paragraph 3 reads as follows:

"I give and bequeath to the pastors of the following churches the amounts of money set after their names for the purpose of saying masses for the souls of my husband Frank Rywolt and myself: (a) St. Valentine's Polish Church, situated in Williamsbridge, $250; (b) St. Cadmus Polish Church, Yonkers, N. Y., $250; (c) St. Mary's Roman Catholic Church, Williamsbridge, $250; (d) St. Joseph's Roman Catholic Church, near One-Hundred and Seventy-Seventh street and Washington avenue, Tremont, N. Y., $250."

[1] At the time of the death of the decedent, on the 25th of January, 1911, Rev. Antoni Jakuboski was the pastor of St. Valentine's Polish Church of Williamsbridge and continued to be such up to on or about May 2, 1912. At the present time Rev. Charles Czarkowski is the pastor of the said church, and the executor asks this court to construe that paragraph so that it may be determined which of the two pastors is entitled to the aforesaid bequest. The legacy of $250 should be given to the pastor of the church at the time of the death of the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes